Meyer, J.
(dissenting). The majority’s conclusion that exclusion of “any obligation of the insured to indemnify another because of damages arising out of * * * [bodily] injury [to an employee of the insured]” does not exclude an obligation by way of contribution for such an injury rests on three premises: (1) contribution differs from indemnification (at pp 497-498); (2) the exclusion was not written with specific reference to contribution (at p 498); and (3) “indemnify” is ambiguous because it encompasses the concept of “insure” (at p 499). Although I agree with the first *500 premise as an abstract proposition of law, both the first and the second premises are irrelevant to the construction of the clause in question, and the third is mistakenly applied by the majority there being no true ambiguity in the context of the exclusion and the common speech of men. I, therefore, respectfully dissent.
At issue is not whether indemnity differs from contribution in the lexicon of the law, but whether in “the reasonable expectation and purpose of the ordinary business man” the obligation to contribute to another part of the money paid by him as damages for bodily injury to an employee of the insured is encompassed within the concept of “indemnify” as used in exclusion (j)- The quoted phrase is taken from the oft-cited opinion in Bird v St. Paul Fire & Mar. Ins. Co. (224 NY 47). The issue there was whether damage to a vessel from concussion caused by an explosion resulting from a fire in a railroad freight yard some distance from the vessel was within the coverage of a fire insurance policy on the vessel. The Appellate Division had held space not a factor in causation. Overruling that conclusion and holding that the policy did not cover the loss, Judge Cardozo, in reasoning which puts the issue in the present case in proper focus, stated (224 NY, at pp 51-52):
“The problem before us is not one of philosophy (Pollock Torts [10th ed.], p. 37). If it were, there might be no escape from the conclusion of the court below. General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. There are times when the law permits us to go far back in tracing events to causes. The inquiry for us is how far the parties to this contract intended us to go. The causes within their contemplation are the only causes that concern us.
ijí ÍJÍ
“This view of the problem of causation shows how impossible it is to set aside as immaterial the element of proximity in space. The law solves these problems pragmatically. There is no use in arguing that distance ought not to count, *501 if life and experience tell us that it does. The question is not what men ought to think of as a cause. The question is what they do think of as a cause. We must put ourselves in the place of the average owner whose boat or building is damaged by the concussion of a distant explosion, let us say a mile away. Some glassware in his pantry is thrown down and broken. It would probably never occur to him that within the meaning of his policy of insurance, he had suffered loss by fire. A philosopher or a lawyer might persuade him that he had, but he would not believe it until they told him” (emphasis in original).
Likewise here, it is the pragmatic view of the ordinary businessman that determines the result.
Because that is the rule, it is no more material to decision of this case that in the lexicon of the law contribution is distinguishable from indemnity than were the general definitions of proximate cause to which the Bird decision referred material to its determination. Here, as there, it is what is within the contemplation of the average man who speaks of an obligation to indemnify that controls.
For like reason I agree that what the carriers said to the Superintendent of Insurance when exclusion (j) was revised is not controlling. What is determinative is what a purchaser of the policy versed only in the common speech of man and without knowledge of what had been presented to the superintendent would understand from the language used. Moreover, the rule is the same whether the language in question is in a policy provision describing coverage or an exception from coverage (Bird v St. Paul Fire & Mar. Ins. Co., 224 NY 51, 55, supra; Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364; North Amer. Iron & Steel Co. v Isaacson Steel Erectors, 36 AD2d 770, 771, affd 30 NY2d 640; see I Q Originals v Boston Old Colony Ins. Co., 58 NY2d 651, affg 85 AD2d 21; Hellert v Travelers Ins. Co., 52 AD2d 751).
For the majority it is a sufficient answer to the pertinent inquiry that an ambiguity exists because “[i]n common parlance ‘to indemnify’ also means ‘to insure’ ” (at p 499). While not intending to engage in a battle of dictionaries, I *502 find it of some significance that many dictionaries do not include “insure” among the definitions of “indemnify”[1] and that Webster’s New Dictionary of Synonyms includes under “indemnify” only “reimburse, recompense, compensate, remunerate, pay, repay, satisfy.” More important, however, is the fact that those dictionaries that do use the word “insure” do so only as but one of several meanings and then only in a secondary sense consistent with the connotation of “reimbursement” or “payment”: “to protect against or keep free from loss, damage, etc.; to insure.”[2] Instructive is Webster’s New Dictionary of Synonyms, which states (at p 599): “Indemnify implies promised or actual reimbursement for loss (as by fire), for injury (as by accident), or for damage (as by war or disaster) [the basic purpose for which insurance exists is to indemnify persons subject to loss when such loss occurs — Hedges].” Thus, “insure” in truth creates no ambiguity for it carries no connotation of insuring a risk; indeed it speaks to no more than reimbursement for loss, whether for all or only for part. Put another way, that insurance indemnifies does not mean that an ordinary businessman would read exclusion (j)’s reference to “any obligation * * * to indemnify” (emphasis supplied) not to exclude from coverage an obligation on his part to reimburse a joint tort-feasor for a share of the damages paid an employee of the insured, as well as to reimburse one held vicariously liable for the full account of the damages.
Realistically the ordinary businessman purchasing both liability insurance and a separate workers’ compensation policy, as did Dayton, would not think twice about the matter because he would, if he thought about it at all, be satisfied that whatever exclusion (j) of the liability policy excluded, coverage B[3] of the compensation policy would *503 protect against (cf. Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368-369, supra; North Amer. Iron & Steel Co. v Isaacson Steel Erectors, 36 AD2d 770, affd 30 NY2d 640, supra). That the County of St. Lawrence self-insures its compensation liability does not require a different conclusion as to it; the common understanding of the word “indemnify” does not vary with whether other insurance is available, the more so because it is “any obligation * * * to indemnify” (emphasis supplied) which is excluded. To paraphrase the holding in Lionel Freedman, Inc. (27 NY2d, supra, at p 368): The exclusion, considered as a whole, indicates that the term “indemnify” should be read in the sense of reimburse or repay “and the reasonable man reading the policy would draw no other conclusion.”
Nothing in Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co. of N. Y. (45 NY2d 551) or in our denial of leave in the Green Bus Lines v Consolidated Mut. Ins. Co. case (52 NY2d 701) militates against the conclusion here reached. Graphic Arts dealt with a differently worded exclusion of “any obligation for which the insured or any carrier as his insurer may be held liable under any workmen’s compensation * * * law” (45 NY2d, at pp 556-557) and we held simply that “the Workers’ Compensation Law does not require the employer to contribute to a nonemployee joint tort-feasor” (id., at p 558). And as the majority footnote agrees, our denial of leave in Green Bus Lines is without precedential value, either way.
Because the rules governing construction of exclusion (j) allow for no other conclusion than that the obligation to indemnify for damages resulting from injury to an employee are not within the general liability coverage whether that obligation be by way of contribution or indemnification, I would reverse and grant plaintiff’s motion for summary judgment in the Dayton Tool case and affirm in the County of St. Lawrence case.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler; Judge Meyer dissents and votes to affirm in a separate opinion.
In Insurance Co. of North Amer. v Dayton Tool & Die Works: Order affirmed, with costs.
*504 In County of St. Lawrence v Travelers Ins. Cos.: Order reversed, with costs, and order of Supreme Court, St. Lawrence County, reinstated.

. (See, e.g., Webster’s Third New International Dictionary; Webster’s New Collegiate Dictionary; Black’s Law Dictionary [Rev 4th ed]; Black’s Law Dictionary [5th ed].)

. (Webster’s New World Dictionary of the American Language [2d Coll ed].) Likewise the American Heritage Dictionary of the English Language includes as one meaning “To protect against possible damage, legal suit, or bodily injury; to insure.”

. “The words ‘damages because of bodily injury by accident or disease, including death at any time resulting therefrom,’ in coverage B include damages for care and loss of services and damages for which the insured is liable by reason of suits or claims brought against the insured by others to recover the damages obtained from such others because of such bodily injury sustained by employees of the insured arising out of and in the course of their employment.”